IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD D. RICHARDSON,<br><br>   Plaintiff,<br><br>   v.<br><br>JO ANNE B. BARNHART, Commissioner,<br><br>   Defendant. | No. C 05-04403 CRB<br><br>**MEMORANDUM AND ORDER** |

Plaintiff Donald D. Richardson appeals from a denial of social security benefits. Plaintiff challenges the decision of the Administrative Law Judge ("ALJ") on the ground that the ALJ committed error in its determination of Plaintiff's residual functional capacity ("RFC"). Plaintiff first claims that the "ALJ failed to consider the impairments of gout, diabetes, and hypertension, and that plaintiff is morbidly obese." Second, Plaintiff alleges that the ALJ committed error by finding the Plaintiff's testimony not fully credible or reliable. Now pending before the Court are cross motions for summary judgment. Having reviewed the administrative record and the memoranda submitted by the parties, the Court DENIES Plaintiff's motion and GRANTS Defendant's motion.

**BACKGROUND**

**I. Procedural History**

Plaintiff filed an application for Disability Insurance Benefits pursuant to Title II and

Part A of Title XVIII of the Social Security Act, as amended ("the Act"), on September 26, 2002. Tr. at 21, 66. Plaintiff claimed that his disability commenced on February 1, 1999. Id. His application was denied on initial review and again on reconsideration. Tr. at 21, 35-36. After a proper request, Plaintiff's claim was heard before an ALJ on July 27, 2004. Tr. at 21, 40, 254. By written decision dated January 18, 2005, the ALJ found that the Plaintiff was not disabled within the meaning of the Act and therefore denied his claim. Tr. at 21-26. In particular, the ALJ determined that Plaintiff has a severe impairment in that he "has medically determinable 'severe' morbid obesity . . . and status post right ankle sprain and pain." Tr. at 22. The ALJ found, however, that "gout and headaches are not medically determinable 'severe' impairments." Tr. at 23. The ALJ also determined that Plaintiff's impairments "do not meet the criteria of any medical condition described in the Listing of Impairments." Id. In addition, the ALJ found that Plaintiff retains residual functional capacity to perform "sedentary work." Tr. at 24. Although the ALJ found Plaintiff could not return to his past relevant work, he found that Plaintiff could perform two jobs that exist in significant numbers in the regional and national economy. Tr. at 24-25.

Plaintiff requested review of the ALJ decision by the Appeals Council. Tr. at 17. On August 24, 2005, after considering additional evidence and setting aside its previous action denying Plaintiff's request, the Council again denied Plaintiff's request for review, making the ALJ's decision final and binding. Tr. at 5. Plaintiff properly commenced the instant action for judicial review of the Commissioner's final decision on October 28, 2005 pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Factual Background

### A. Plaintiff's Disability Claim

It is undisputed that Plaintiff's "date last insured" is December 31, 1999 and that in order to receive Title II benefits Plaintiff must establish disability on or before that date and up to the date of the hearing. Tr. at 265. Plaintiff was 34 years old at the time of the hearing and is a high school graduate who has relevant past work experience as a kitchen helper. Tr. at 22. In his disability report Plaintiff alleged that the "illnesses, injuries or conditions that

2

limit his ability to work" are his "arthritis in right ankle." Tr. at 79. In his request for hearing application, Plaintiff indicated that he disagreed with the determination made on his claim because his severe obesity puts stress on his ankle which causes pain and swelling and because he is a diabetic and has high blood pressure. Tr. at 40.

**B. Plaintiff's Testimony**

During the administrative hearing, Plaintiff testified that he is unable to work because of the pain in his right ankle, headaches related to his high blood pressure, lower back problems, and episodes of gout. Tr. at 267-77. He is 5' 11" and estimated his weight to be at least 350 or 360 pounds. Tr. at 265. His ankle constantly hurts and if he walks half-a-block he has to sit down and rest for at least 15 minutes. Tr. at 268. He is not receiving any kind of specific treatment for his ankle — no injections — and no surgery is planned. Tr. at 269. He has a brace that he cannot wear because he no longer has the proper attachments. Id. Plaintiff has not spoken to his doctor about the brace problem and does not have any future appointments because his medical coverage is expiring. Tr. at 269-70.

Plaintiff also testified that he has headaches "basically every day" for which he has to lay down and rest for up to an hour or longer. Tr. at 270-71. He has informed his doctor about the headaches and the doctor told him to watch what he eats and to exercise, things he has not done because he does not want his ankle to flare up. Tr. at 271-72. He also informed his doctor of his back problems and his episodes of gout. Tr. at 274-77. Plaintiff has problems with his back a couple of times a month. Tr. at 274. These episodes require him to sit down for at least one hour before he can get up and move around again. Tr. at 274. Again, his doctors have told him to exercise and watch what he eats. Id. Plaintiff gets the episodes of gout "maybe twice a month" and they can sometimes last more than a week. Tr. at 275-76. Plaintiff must either sit or lay down and elevate his foot above his heart. Tr. at 276. Plaintiff had medical coverage through his wife's employment at Kaiser until July, 2004. Tr. at 270.

On a typical day Plaintiff fixes breakfast for his daughters, does "a little cleaning around the house," — i.e. washing dishes, taking out the trash — and relaxes watching

3

television or reading the paper. Tr. at 278-79. He has difficulty going up and down the stairs in his apartment "to the point that [his ankle] sometimes swells up or gets sore and he has to sit down" and rest for at least 20 minutes. Tr. at 278.

The last job Plaintiff held was as a senior food service worker for approximately six months at the University of California at Berkeley. Tr. at 262, 264. The job consisted of both janitor and dishwasher duties. Tr. at 262-64.

## C. Disability Report and Pain Questionnaire

In the disability report dated September 11, 2002, Plaintiff indicated that he cannot be on his feet for more than 30 minutes in each hour. Tr. at 79. On a pain questionnaire dated February 3, 2003, Plaintiff reported that he has pain in his right foot and ankle that began on February 4, 1999 and which occurs whenever he walks and stands for over 30 minutes. Tr. at 92. The pain lasts until he takes pain medication and/or rests for 30 to 45 minutes. Tr. at 92. As to his usual daily activities, Plaintiff indicated that he can "do all of those things only for short periods of time" — referring to the examples listed in the question: "walking, shopping, household chores, driving, socializing, etc." Tr. at 93. Plaintiff further reported that he is able to walk 2-3 blocks outside his home, and is capable of standing 30 minutes at a time. Tr. at 94. Plaintiff also indicated that he is able to do errands such as going to the Post Office or grocery store without assistance and is able to do light housekeeping chores (dusting, cooking, etc.) without assistance. Id.

## D. Medical Evidence

The medical record maintained by the UC Berkeley University Health Services indicates that Plaintiff suffered an ankle sprain when he tripped while at work on February 4, 1999. Tr. at 136, 164. The examining doctor limited Plaintiff to standing or walking in 10 minute intervals per hour on the date of the accident. Tr. at 166. In March 1999, he was limited to standing or walking in 5 minute intervals for two days, then released to gradually increase up to 15 minutes per hour. Tr. at 151. By March 15, 1999, his examining doctor indicated that Plaintiff could walk up to 45 minutes with an air cast and arch supports in his

4

shoes. Tr. at 146. In August 1999, his examining doctor found Plaintiff could walk independently for a period of 15 minutes per hour. Tr. at 137.

The medical records from his treating physician, orthopaedic surgeon Dr. William R. Cimino, M.D., dated March 15, 1999, indicate that Plaintiff "is an otherwise relatively healthy gentleman" except for morbid obesity and right ankle sprain and pain. Tr. at 207. Dr. Cimino cleared Plaintiff for vocational rehabilitation on September 20, 1999 and released him for sedentary work with occasional walking or standing for periods of 10 minutes per hour on October 4, 1999. Tr. at 178, 180. On February 10, 2000, Dr. Cimino declared that Plaintiff's ankle injury was permanent and stationary, and limited Plaintiff to standing or walking for periods of no more than 10-15 minutes at a time. Tr. at 175-76. Dr. Cimino categorized Plaintiff's work preclusions as "semi-sedentary work." Tr. at 176. The February 10, 2000 report also indicates that Plaintiff stated that the pain in his ankle is 2-3 out of 10, which Dr. Cimino rated as "slight pain." Tr. at 175. As of that date Plaintiff was not taking any medications, wore the brace, and was participating in an independent gym program. Tr. at 176. By March 25, 2002, Plaintiff did not require any medications or therapy. Tr. at 172. Dr. Cimino indicated a need to see him only periodically for replacement of his brace. Id. The March 25, 2002 report also indicates that Plaintiff stated that his ankle "is not particularly painful" and that he was participating in a walking program that seemed to be helping his ankles. Tr. at 171.

The medical records provided by the Alameda County Medical Center state that Plaintiff weighed 380 pounds as of August 18, 2004. Tr. at 229.

The medical records from Kaiser covering the period from November 16, 2003 through October 2, 2004 reflect only routine care and recommendations for bicycle exercise. Tr. at 230-35.

**E.  Physical Residual Functional Capacity Assessment by Dr. VanCompernolle**

Dr. LolaLee VanCompernolle, M.D., assessed Plaintiff's residual functional capacity and her findings are dated March 10, 2003. Tr. at 215-22. Dr. VanCompernolle's assessment reports that Plaintiff's exertional limitations include the ability to: occasionally

5

lift or carry 10 pounds, frequently lift or carry less than 10 pounds, stand or walk for a total of about 2 hours in an 8-hour workday and no more than 10-15 minutes at a time. Tr. at 215-16. These limitations also include the inability to walk on uneven terrain or to do frequent pedal work. Tr. at 216. Dr. VanCompernolle also found that there are no treating or examining source conclusions about Plaintiff's limitations or restrictions which are significantly different from her findings. Tr. at 221.

### F.  Vocational Expert Testimony

During the administrative hearing vocational expert Dennis Contreras testified that an individual with the same age, education and work history as Plaintiff who is restricted to sedentary activity and who can only stand and walk up to two hours per day but only in 10 to 15 minute intervals at a time would not be able to perform the past relevant work that Plaintiff performed. Tr. at 24, 282-83. He further testified that there were two unskilled positions that Plaintiff could perform with those limitations: (1) small product assembler and (2) hand packager. Tr. at 283. He found 371 assembler positions in the local economy and 57,000 positions nationally. Id. Contreras also found 107 hand packager jobs in the local economy and 10,000 jobs nationally. Id.

## LEGAL STANDARD

This Court's jurisdiction is limited to determining whether the Social Security Administration's denial of benefits is supported by substantial evidence in the administrative record. 42 U.S.C. § 405(g). A district court may overturn a decision to deny benefits only if it is not supported by substantial evidence or if the decision is based on legal error. See Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. Determinations of credibility, resolution of conflicts in medical testimony and all other ambiguities are to be resolved by the ALJ. Id. The decision of the ALJ will be upheld if the evidence is "susceptible to more than one rational interpretation." Id. at 1040.

To be eligible for benefits a claimant must prove a disability. See Ukolov, 420 F.3d at 1004. The claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)).

In considering whether a claimant has demonstrated a disability and is entitled to benefits, an ALJ conducts a five-step sequential inquiry. 20 C.F.R. § 416.920. At the first step, the ALJ considers if the claimant is engaged in substantial gainful activity; if the claimant is not engaged in substantial gainful activity, the second step asks if the claimant has a severe impairment (i.e. an impairment that has a significant effect on the claimant's ability to function); if the claimant has a severe impairment, the third step asks if the claimant has a condition which meets or equals the conditions outlined in the Listings of Impairments in Appendix 1 of the regulations (the "Listings"); if the claimant does not have such a condition, the fourth step asks if the claimant is capable of performing his past relevant work given the claimant's residual functional capacity; if the claimant is not capable of performing his past relevant work, the fifth step asks if the claimant is capable of performing other work which exists in substantial numbers in the national economy. 20 C.F.R. §§ 404.1520(b)-404.1520(f)(1).

## DISCUSSION

### I. The ALJ's Decision

The ALJ determined that Plaintiff was not entitled to a period of disability or Disability Insurance Benefits because he was not disabled within the meaning of the Act. Tr. at 26. The ALJ made his decision at what he called "step six of the sequential evaluation process." Id. The ALJ specifically found that Plaintiff met the insured status requirements for Title II benefits based on disability as of his alleged onset of disability, and continued to meet them through December 31, 1999. Tr. at 22. At step one of the inquiry, the ALJ found that claimant has not performed substantial gainful activity since his alleged onset date of

7

February 1, 1999. Id. At step two the ALJ found that Plaintiff has severe impairments including: morbid obesity at 5'11" and 380.2 pounds and status post right ankle sprain and pain. Id. The ALJ also found that gout and headaches are not medically determinable severe impairments within the meaning of the Act. Tr. at 23. Although Plaintiff has severe impairments, at step three the ALJ found that the impairments, either alone or in combination, were not equivalent to any section in the new Listings. Id. At step four, the ALJ found that Plaintiff has residual functional capacity for sedentary work due primarily to morbid obesity and that he can stand and walk for short periods of about 10 to 15 minutes at a time due to obesity and residual right ankle pain. Tr. at 24. The ALJ also found that Plaintiff could not perform his past relevant work but, at what the ALJ called step six, found that Plaintiff is capable of performing other work which exists in significant numbers in the regional and national economy. Id.

## II. Analysis

### A. ALJ's Consideration of Impairments

Plaintiff contends that the ALJ committed error at step five of the sequential inquiry. He argues that because the ALJ failed to consider the impairments of gout, diabetes, hypertension and morbid obesity in determining Plaintiff's residual functional capacity, the finding that Plaintiff could perform sedentary work is in error. Defendant contends that substantial evidence supported the ALJ's analysis of the medical evidence and the ALJ's RFC determination.

At step two of the five-step sequential inquiry the ALJ must determine whether the claimant has any severe impairments (i.e., an impairment that has a significant effect on the claimant's ability to function). 20 C.F.R. § 404.1520(c). To establish that a claimant has a severe impairment, the "impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508. The impairment must also be established "by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimants] statement of symptoms." Id. "Signs are anatomical, physiological, or

psychological abnormalities which can be observed, apart from [the claimant's] statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques." 20 C.F.R. § 404.1528(b). "Laboratory findings are anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques." 20 C.F.R. § 404.1528(c). The claimant has the burden of providing the medical evidence showing the existence of an impairment and its severity. 20 C.F.R. § 404.1512(c).

### 1. The ALJ considered morbid obesity

The ALJ considered Plaintiff's morbid obesity in his determination of the claim both at step two and in determining Plaintiff's RFC. At step two of the sequential inquiry the ALJ found that Plaintiff's morbid obesity is a medically determinable severe impairment. Tr. at 22. In the RFC determination the ALJ found that claimant has the capacity for sedentary work "due primarily to morbid obesity." Tr. at 25. He found that Plaintiff can "stand and walk for short periods of about 10 to 15 minutes at a time due to obesity and residual right ankle pain." Id. The ALJ's determination of Plaintiff's capacity to function was based primarily on his morbid obesity and the pain he experienced in his right ankle.

### 2. The ALJ properly rejected the gout claim

Plaintiff's allegations of gout as a limiting impairment were considered both at step two and in the ALJ's RFC determination. The ALJ found that gout is not a medically determinable severe impairment. Tr. at 23. He also found that the record did not contain any testimony of any treatment for gout and no limitations from gout. Tr. at 22. The ALJ explained that "regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable impairment cannot be established in the absence of objective abnormalities, i.e., medical signs and laboratory findings." Tr. at 22. Although Plaintiff testified at the hearing that he suffered from episodes of gout twice a month that can last more than a week at a time, there is no evidence in the medical record that Plaintiff ever received treatment for gout or even suffered from gout. Tr. at 275-77, 128-235. The ALJ considered the allegations of gout as a

potential limiting impairment and made specific findings to the contrary that are supported by substantial evidence in the record.

### 3. The ALJ properly rejected the "headaches" impairment

The ALJ similarly found that headaches are not medically determinable severe impairments. Tr. at 23. The ALJ found that there is no indication of care or treatment for headaches. Tr. at 22. Plaintiff testified that his headaches are related to his hypertension. Tr. at 270. There is medical evidence in the record that Plaintiff has a history of hypertension; however, there is no evidence that Plaintiff received treatment for headaches caused by the hypertension. Tr. at 207, 128-235. "An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability . . . ; there must be medical signs and findings, . . . which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which . . . would lead to a conclusion that the individual is under a disability." 42 U.S.C. § 423(d)(5)(A). Plaintiff has failed to provide any medical signs or findings regarding his headaches. The ALJ considered Plaintiff's testimony regarding the headaches during his RFC determination, but also ultimately found claimant was not "wholly credible." Tr. at 25.

### 4. The ALJ properly found no limitations from hypertension and diabetes

There is no indication in the medical record or in Plaintiff's testimony that the hypertension itself, apart from the headaches, causes any limitation or impairment on Plaintiff's ability to work. Plaintiff has not shown an inability to "engage in any substantial gainful activity by reason of" the hypertension, the condition the Plaintiff now contends should have been considered a medically determinable impairment. See Burch, 400 F.3d at 679.

Plaintiff's contention that the ALJ improperly failed to consider his diabetes similarly fails. There is no evidence in the medical record or in Plaintiff's testimony that his diabetes created a limitation on his ability to engage in substantial gainful activity. See id.

//

10

**5. Summary**

The ALJ considered Plaintiff's morbid obesity, and his claims of gout, and headaches in making his determination. Diabetes and hypertension, apart from the headaches, were not considered by the ALJ because there was no indication in the record, testimony or medical evidence that Plaintiff received any treatment or was disabled by these impairments. The ALJ did not commit legal error and his determinations as to Plaintiff's medically determinable severe impairments are substantially supported by the record. The ALJ applied the appropriate legal standard as defined by the regulations of the Act and his decision is supported by the relevant evidence in the record.

**B. ALJ's Consideration of Plaintiff's Testimony**

Plaintiff also argues that the residual functional capacity determination is in error because the ALJ erroneously found Plaintiff's testimony not fully credible or reliable. Defendant contends that the ALJ gave legally sufficient reasons supporting his credibility finding and the finding should be upheld.

A claimant will not be considered disabled based solely on subjective complaints of pain or other symptoms. See Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991); 42 U.S.C. § 423(d)(5)(A). "The claimant must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged . . . ." Bunnell, 947 F.2d at 344 (citing 42 U.S.C. § 423(d)(5)(A)). "Once the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity." Id. at 345.

The ALJ must give specific, clear and convincing reasons to reject allegations of subjectively disabling symptoms. See Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002)(citing Bunnell, 947 F.2d at 346). The ALJ may consider various factors in assessing the credibility of the allegedly disabling subjective symptoms. See 20 C.F.R. § 404.1529; see also Bunnell, 947 F.2d at 346-47. Such factors include "the nature, location, onset, duration, frequency, radiation of any pain;" "precipitating and aggravating factors;" "type,

11

dosage, effectiveness, and adverse side-effects of any pain medication;" "treatment, other than medication, for relief of pain;" "functional restrictions;" "the claimant's daily activities;" "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment;" and "ordinary techniques of credibility evaluation" such as inconsistencies in the testimony or relevant character evidence. Bunnell, 947 F.2d at 346-47. "The ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints." Burch, 400 F.3d at 680. In this case, the ALJ articulated adequate reasons for finding that the claimant was not wholly credible regarding his testimony of disabling excess symptoms.

In considering Plaintiff's testimony regarding disabling pain, the ALJ considered his doctors' medical opinions. Medical opinions of the claimant's treating source and other medical opinions can also be considered in evaluating the intensity and persistence of the claimant's symptoms, such as pain, and determining the extent to which they limit his capacity to work. 20 C.F.R. § 404.1529(c)(1). The ALJ explained that despite his complaints, Plaintiff's treating physician released him to sedentary activity with standing and walking for 10 minutes per hour since October 1999. Tr. at 24. Plaintiff testified that he can walk for about half a block and then he has to sit down and rest, that he has painful gout attacks to his right foot, and that he spends most of his time at home resting and caring for his symptoms. Tr. at 24-25. The ALJ noted that despite this testimony, the medical records show that Plaintiff has been cleared by all of his doctors — treating and examining — to sedentary or semi-sedentary work with limits on walking and standing for 10-15 minutes. Tr. at 23. The ALJ also noted that as of March 25, 2002, the claimant no longer needed therapy or medications. Tr. at 23.

The ALJ also considered the lack of objective medical evidence in discounting Plaintiff's testimony regarding other disabling symptoms: "there is no significant treatment for headaches or gout." Tr. at 24. "He is described by his treating doctor as being healthy except for his obesity and right ankle pain." Id. The ALJ also noted that the treating records from Kaiser reflect only routine care with no treatment for gout. Tr. at 23.

12

Further, the ALJ also discredited Plaintiff's testimony regarding disabling symptoms, including pain, for lack of consistent treatment: Plaintiff "has not received any significant care [for his right ankle] since he was released to vocational rehabilitation in September 1999." Tr. at 24. Again, there is no indication of treatment for headaches or gout. Tr. at 24. Plaintiff argues that the ALJ committed error by not accepting Plaintiff's reason — lack of funds — for not obtaining medical treatment for his ailments. There is no suggestion in the record, however, that Plaintiff gave this explanation to the ALJ. Additionally, Plaintiff testified that he had medical coverage through his wife's employment until the month of the administrative hearing, July 2004. Tr. at 270.

In considering Plaintiff's testimony about his disabling symptoms the ALJ also considered observations he made of the Plaintiff during the hearing. The ALJ stated that "despite his weight he had no significant difficulty sitting, walking or testifying that could be observed by a lay person." Where the ALJ made specific findings supported by substantial evidence justifying the credibility determination "[t]he inclusion of the ALJ's personal observations does not render the decision improper." Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999). The ALJ made clear that he was not basing his entire decision or credibility assessment on his appearance at the hearing alone, but that it was simply one factor which he considered along with all the other evidence of the record. Tr. at 24.

Plaintiff contends that the ALJ failed to consider the nature of Plaintiff's daily activities with enough specificity to determine that the activities were inconsistent with his claimed limitations. Consideration of a claimant's daily activities, however, is but one of the possible factors an ALJ can use to discredit the claimant's allegations. See Bunnell, 947 F.2d at 346. There is no indication in the ALJ's decision that Plaintiff's credibility was undermined because Plaintiff's activities were inconsistent with his limitations. The ALJ's credibility assessment focused on the inconsistencies in the medical record between Plaintiff's allegations that his pain and other symptoms were disabling and (1) opinions by

13

his treating and examining physicians; (2) lack of consistent treatment; (3) lack of objective medical evidence as to gout and headaches; and (4) Plaintiff's appearance at the hearing.

Plaintiff also argues that because the ALJ found that Plaintiff's pain testimony was not fully credible, by deduction the "ALJ did not clearly rate that the Plaintiff's testimony regarding the other limitations as not fully credible." Plaintiff misstates the ALJ's finding. The ALJ found that the claimant was not "wholly credible insofar as he alleges excess symptoms which would disable him. Such excess symptoms are unsupported by the record as a whole." Tr. at 25. The ALJ's credibility finding encompassed all of Plaintiff's testimony regarding disabling symptoms, including the pain in his right ankle and the pain from his headaches and gout.

Plaintiff further argues that the "ALJ failed to clearly and specifically identify any pain that goes beyond that certain level associated with his impairments" and based on this failure the case should be remanded. Plaintiff's analysis of the law, however, is flawed. The ALJ is required to make specific findings for rejecting a claimant's allegations of subjectively disabling symptoms, including pain. See Thomas, 278 F.3d at 960. The ALJ must also specify what testimony is not credible and identify the evidence that undermines that testimony. Burch, 400 F.3d 680. The ALJ, however, is not required to indicate which pain goes beyond a certain level associated with his impairments. Here, the ALJ found that Plaintiff established an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C. § 43(d)(5)(A). The severity of that pain or other symptoms, however, does not require medical findings because of the recognized inability of medical science to objectively verify the extent of pain experienced by an individual. Bunnell, 947 F.2d at 343-45. Once the claimant produces objective medical evidence of an underlying impairment, as Plaintiff did in this case, the adjudicator must then evaluate the severity of the pain to determine if it is disabling to the Plaintiff. In order to make that evaluation, the adjudicator must make determinations as to whether the claimant's allegations of severity are credible or not and must make specific findings to support this conclusion. Id. at 345. The adjudicator, however, is not required to find what

level of pain is normal or generally associated with a certain type of impairment; the adjudicator must simply determine whether the claimant's allegations of disabling pain are credible.

Plaintiff's final argument is that the ALJ committed error by failing to consider the entire record; specifically the statements contained in the Plaintiff's medical reports submitted after his initial submission. These medical records were submitted May 11, 2005, four months after the ALJ's decision. The medical records were reviewed by the Appeals Council in August 2005. Tr. at 5. The Appeals Council, however, found no reason to review the ALJ's decision even with the newly submitted evidence. Id. Although the newly submitted medical records do indicate that Plaintiff received a prescription for gout and contains a medical opinion that indicates that his "medical conditions make it difficult for him to do any meaningful work," these records are for the period of February 2005 to May 2005. Plaintiff has the burden of establishing a disability on or before his DLI of December 31, 1999. Tr. at 265; see also Morgan v. Sullivan, 945 F.2d 1079, 1080 (9th Cir. 1991) ("In order to receive disability benefits Morgan must demonstrate he was disabled prior to his last insured date"). At the time of Plaintiff's DLI and up to the time of the hearing there was no evidence of any treatment for gout and no medical opinion that suggested that Plaintiff was completely unable to work. This new evidence does not apply to the relevant time period.

The ALJ gave legally sufficient reasons for rejecting Plaintiff's allegations of subjectively disabling symptoms when determining his RFC, therefore the ALJ's findings must be given deference.

## CONCLUSION

The ALJ based his decision on substantial evidence in the record and there is no error of law. Accordingly, the Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's motion for summary judgment.

**IT IS SO ORDERED.**

Dated: Nov. 21, 2006

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE